IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **BETSY CHANDLER** | § | **PLAINTIFF** |
| | § | |
| v. | § | **CAUSE NO. 1:07CV25 LG-JMR** |
| | § | |
| **STATE OF MISSISSIPPI** | § | |
| **DEPARTMENT OF CORRECTIONS** | § | **DEFENDANT** |

### MEMORANDUM OPINION AND ORDER
### GRANTING MOTION FOR SUMMARY JUDGMENT

THIS CAUSE COMES BEFORE THE COURT for consideration of the Defendant's Motion for Summary Judgment [40]. Plaintiff Betsy Chandler has filed her response. After due consideration of the submissions and the relevant law, the Court finds that the MDOC is entitled to the *Ellerth/Faragher* defense in regard to Chandler's hostile work environment claim. Further, the Court finds there is no question of material fact for the jury on Chandler's retaliation and due process claims. The Motion will therefore be granted.

FACTS AND PROCEDURAL HISTORY

In this lawsuit, Plaintiff Chandler seeks recompense under Title VII for a hostile work environment created by the sexually harassing behavior of her immediate supervisor at the Mississippi Department of Corrections, Samuel Thompson. Chandler also contends that the MDOC and/or Samuel Thompson retaliated against her for engaging in activity protected by Title VII. Chandler's affidavit (Ct. R. 43-3) describes an escalating pattern of sexually charged comments and some unwanted physical contact by Thompson, beginning in October 2004, approximately seven months after Thompson was appointed to his position of Community Corrections Director. Chandler's position of Corrections Commander reported directly to Thompson. Chandler states that she was afraid to report Thompson's harassment because of his

political connections, and because she believed Thompson's superior, Commissioner Epps, was also a sexual harasser. *Id*. at 3-4. However, Chandler did file a grievance with Deputy Commissioner Lora Cole approximately fourteen months later, on December 19, 2005. *Id.* at 5. At the time, she was on medical leave from work, beginning four days earlier on December 15, 2005.[1] Ct. R. 43-9 p. 10.

     Cole called Chandler on the same day she received Chandler's grievance, and told her that the allegations would be investigated. Ct. R. 43-9 p. 9. Cole also notified Commissioner Epps that the grievance had been filed, and called Thompson to instruct him not to have any contact with Chandler. Ct. R. 43-7 p. 6-7. Cole then notified Chandler via correspondence dated December 29, 2005, that her grievance had been "forwarded to the Human Resources Director who is conferring with the Internal Audit Division. A more complete response will be forthcoming after an official investigation has been completed." Ct. R. 43-25.

     The Human Resources Director, Jesse Smith, testified that Commissioner Epps conducted a meeting in December to discuss Chandler's grievance. Attending were Smith, Cole, and Ken North, Director of the Internal Audit Division. Ct. R. 43-3 p. 7. Epps "stated that he wanted this to be treated like any other investigation. He wanted the facts and he wanted it done expeditiously and he directed Ken North to conduct the investigation." *Id.*

     The resulting Report of Investigation is dated January 24, 2006. Ct. R. 1-3. It is a voluminous document, with written statements, summaries of oral interviews, and transcribed telephone conversations attached. The pertinent conclusion is:

---

[1] Chandler never returned to work, although she has not resigned, nor has she been terminated. Ct. R. 43-9 p. 10. She does not anticipate ever returning to work at the MDOC. *Id.*

> In summary, there is evidence to substantiate the allegation that, over a period of approximately eleven (11) months, Samuel Thompson, Community Corrections Director, Region III, sexually harassed Betsy Chandler, Correctional Commander, Jackson County CWC, by continuously making unsolicited and unwanted comments that she perceived to be sexual in nature. Commander Chandler provided recorded conversations relative to this investigation which indicate that the alleged harassment took place.

Ct. R. 1-3 p. 18.

Commissioner Epps called another meeting when he received the results of the investigation. Ct. R. 43-3 p. 7. He asked for "several department heads to be present," including Mr. Thompson. *Id.* Epps had asked Human Resources Director Jesse Smith to prepare two letters prior to the meeting, one a letter of resignation for Thompson's signature, and the other notifying Thompson of his "imminent" termination. *Id.* at 7-8. Epps advised Thompson of the results of the investigation, and informed him "he had two options, resign or he was going to terminate him." *Id*. at 7. Thompson chose to resign. *Id*. at 8.

On January 6, 2006, while the investigation was ongoing, Chandler filed another grievance directly with Commissioner Epps. Ct. R. 43-4 p. 5 ¶ 23. In response to her complaint that her grievance had not been acted on within the three-day time frame set out in MDOC policy, Jesse Smith explained in a February 3, 2006 letter to Chandler that "I believe it goes without saying responding within a three-(3) day period would not have rendered adequate time for both investigators and other witnesses to be interviewed." Ct. R. 43-26 p. 1. Smith then informed Chandler about the result of the investigation - that Thompson had been given the option of resigning or being terminated, and had chosen to resign. *Id.* Smith also addressed all of the forms of relief requested by Chandler:

> Ms. Cole contacted Mr. Thompson and informed him under no circumstances was he to make any contact with you whether written, verbal or in person. Since you have been out on leave it was not necessary to remove him from your chain of

> command. Certainly if you had continued to work, your request would have been
> honored. Unless you have information not reported to the agency; Mr. Thompson
> has not contacted you since you filed your grievance. As expeditiously as the
> response was to your grievance, we will respond just as quickly to any alleged
> form of retaliation. Commissioner Epps agreed to restore leave taken due to
> circumstances associated with your absence.

*Id*. at 1-2. At some point after her initial grievance,[2] Chandler "forwarded it on to the next step, which was the Employee Appeals Board." Ct. R. 43-9 p. 12. A hearing date was scheduled, but later cancelled when the parties agreed that Chandler had received every remedy she had asked for in her grievances.[3] Ct. R. 43-9 p. 12.

Chandler filed a charge of discrimination with the EEOC on January 31, 2006. The EEOC issued a Notice of Right To Sue on October 16, 2006, advising Chandler it was terminating its processing of her charge of discrimination. Ct. R. 43-38 p. 8. This lawsuit followed.

## DISCUSSION

A.   SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT

The MDOC does not deny that Chandler was subjected to a hostile work environment actionable under Title VII. Instead, the MDOC argues that it is entitled to assert the *Ellerth*/*Faragher* affirmative defense. The Fifth Circuit has described the issues that must be considered before applying this affirmative defense as follows:

> For the sake of clarity, we reiterate our established methodology for analyzing

---

[2] In her EEOC complaint, she gives this date as January 23, 2006, the day before the written Report of Investigation was issued.

[3] Chandler contends that the MDOC changed its position on her leave time after the hearing had been cancelled.

>supervisor sexual harassment cases under Title VII.  First we determine whether the complaining employee suffered a "tangible employment action."  If he has, the claim is classified as a "quid pro quo" case; if he has not, the claim is classified as a "hostile environment" case.  In a quid pro quo suit, proof that a tangible employment action resulted from a supervisor's sexual harassment renders the employer vicariously liable, and no affirmative defense can be asserted. In a hostile environment case, however, the next inquiry is whether the supervisor's actions constituted severe or pervasive sexual harassment: If the conduct was not severe or pervasive, the employer cannot be held liable vicariously for the supervisor's actions; if the conduct was severe and pervasive, the employer is vicariously liable unless the employer can establish both prongs of the conjunctive *Ellerth/Faragher* affirmative defense - the only affirmative defense to vicarious liability now available in a supervisor sexual harassment hostile work environment case.  To establish this defense, the employer must show that (1) the employer exercised reasonable care to prevent and correct promptly any sexual harassment, *and* (2) the complaining employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer.

*Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002).

    1.) <u>Tangible Employment Action:</u>

The first question to be answered is whether Chandler suffered a "tangible employment action."  A tangible employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761(1998).  "A tangible employment action in most cases inflicts direct economic harm. As a general proposition, only a supervisor, or other person acting with the authority of the company, can cause this sort of injury." *Id*. at 762.

Chandler argues that she suffered a tangible employment action when: 1) in June 2007, a year and a half after she last reported for work, the MDOC transferred her correctional commander position to the Pascagoula Restitution Center; 2) the MDOC did not pay her worker's compensation benefits as ordered by the Mississippi Workers' Compensation

-5-

Commission in January 2007; 3) " a couple of weeks" after she filed her grievance, and while she was on leave, Thompson "took back" her state-issued car, laptop computer and cell-phone; and 4) in August 2006, the MDOC ran her twelve weeks of Family Medical Leave Act leave concurrently with her accrued leave, resulting in a "loss" of those twelve weeks of FMLA leave.

It is apparent that all of the actions Chandler complains of occurred *after* her grievance was filed. As opposed to retaliation, which occurs in response to a protected activity (such as filing a grievance), "a tangible employment action is the result of the harassment itself." *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 520 (5th Cir. 2001); *see also Lauderdale v. Tex. Dept. of Crim. Just.*, 512 F.3d 157, 164 (5th Cir. 2007). None of these actions resulted from the harassment itself or Thompson's behavior. Instead, these actions were results flowing from Chandler's absence from work following her grievance, and therefore are in the nature of retaliatory acts rather than tangible employment actions as contemplated by *Ellerth/Faragher*. Therefore, the Court concludes that this is a hostile environment case, rather than quid pro quo.

2.) Severe or Pervasive Sexual Harassment

In a hostile environment case, the next inquiry is whether the supervisor's actions constituted severe or pervasive sexual harassment. There is no question of material fact in this regard. It is undisputed that Samuel Thompson's actions constituted severe or pervasive sexual harassment.

3.) The *Ellerth/Faragher* Affirmative Defense

Because there was severe or pervasive harassment, the MDOC is vicariously liable for Thompson's actions unless it can establish both prongs of the conjunctive *Ellerth/Faragher* affirmative defense. To establish this defense, the employer must show that (1) the employer

exercised reasonable care to prevent and correct promptly any sexual harassment, *and* (2) the complaining employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer.

      4.) <u>The Reasonableness of MDOC's Actions:</u>

The MDOC has provided its Employee Handbook and policies showing that it had in place a sexual harassment policy which defined sexual harassment, Ct. R. 40-22; stated that sexual harassment was prohibited by the MDOC, *id.*; and set out a special grievance procedure for reporting sexual harassment. Ct. R. 40-18 p. 88. Employees were informed that the MDOC would promptly investigate each and every complaint of harassment. Ct. R. 40-23 p. 1-2. Also prohibited was retaliation against complainants or witnesses. Ct. R. 40-22 p. 2-3. As a supervisor, Chandler was required to attend yearly "refresher" training courses in MDOC sexual harassment policies. Ct. R. 43-7 p. 13.

On the same day Chandler initiated the grievance process, she was contacted and told that an investigation would take place. She was interviewed, as was Thompson and four other individuals. Chandler provided a written statement on January 13, 2006, as well as recorded telephone conversations between herself and Thompson in December 2004 and January 2005. Also examined were Thompson's state-issued cellular telephone records. A comprehensive written report of the investigation was prepared, and immediately thereafter, Thompson was asked to resign or be fired. These facts indicate the MDOC's sexual harassment policy and response to Chandler's grievance were "both reasonable and vigorous." *Scrivner v. Socorro Indep. Sch. Dist.,* 169 F.3d 969 (5th Cir. 1999) (holding that school district's anti-discrimination policy, swift response to harassment complaints, and acceptance of harasser's resignation was

sufficient to establish the first prong of an affirmative defense); *see also Casiano v. AT&T Corp.*, 213 F.3d 278, 286-87 (5th Cir. 2000) (finding that an employee's admitted knowledge of employer's policy prohibiting sexual harassment and complaint procedure, and employer's prompt investigation of complaint showed that the employer "exercised reasonable care to prevent, and if not prevented, to correct promptly any sexually harassing behavior by supervisory personnel").

Chandler provides the deposition testimony of Valerie Denise Temple to show that the MDOC had notice of Thompson's harassing behavior, but did nothing about it. Temple testified that she felt harassed by Thompson and told Don Nester about Thompson's behavior "when it was going on," but Nester did nothing about it.[4]  Ct. R. 43-31 p. 6.  Nester also testified about this incident:

> Q. Were you ever made aware that Sam Thompson was harassing any of your employees?
>
> A. I was told by - - an employee called me on the phone one time and said, I would like to talk to you.
>
> Q. And that employee was who, please?
>
> A. Denise Temple.
>
> . . .
>
> Q. What did Denise tell you when you went up and met her?
>
> A. She told me that - - she said, I have some concerns. And about the time she started, I said, are you making an official complaint to me, and she said, no. And I told her, I said, you're tying my hands, and she said, I'm not saying anything else, but this is the things that he's been doing.

---

[4] This information does not appear in the written summary of Temple's oral interview in the MDOC's investigation of Chandler's grievance.

> She did not go into detail.  But she said, I feel it.
> And I said, if you'll - - you want to make an official complaint, we'll run with this.  She said, no, because I'll lose my job.  And I said, no.  She said, yes, I will, he's too powerful and he has too many friends and I'll lose my job and I'm not saying anything else.  I said, okay, if you change your mind, you know, let me know.  And nothing else was said.
>
> . . .
>
> Q. Why couldn't you help her?
>
> A. Because if she's not going to make an official complaint and I haven't seen anything and then I'm going to make a complaint to Jackson on my supervisor and I have no basis behind it because I haven't seen it, no.

Ct. R. 43-32 p. 4-5.

Although Temple did not give any examples of the behavior she found offensive, she mentioned Betsy Chandler's name in this conversation with Nester. *Id*. at 5.  Thus, Nester was cryptically informed of Thompson's sexual harassment of Chandler at some point during Thompson's tenure at the MDOC.[5]  But to impute constructive knowledge to the MDOC, there must be "constructive knowledge on the part of someone whose actual knowledge also would impute knowledge to the employer." *Sharp v. City of Houston*, 164 F.3d 923, 930 (5th Cir. 1999).  "This means a corporate enterprise 'knew or should have known' something only when the appropriate persons within that enterprise 'knew or should have known.'  In the context of sexual harassment, such persons are those with remedial power over the harasser." *Id.*  Thompson was Nester's superior; Nester had no remedial power over him.  Thus, Nester's knowledge of Chandler's harassment cannot be imputed to the MDOC.

The Court concludes that the MDOC acted reasonably in establishing and following its

---

[5] Neither Temple nor Nester give a date or any sort of time-frame for their conversation.

sexual harassment policy when Chandler's complaints were brought to its attention.

        5.) The Reasonableness of Chandler's Actions:

The second prong of the *Faragher/Ellerth* defense effectuates a "policy imported from the general theory of damages that a victim has a duty 'to use such means as are reasonable under the circumstances to avoid or minimize the damages' that result from violations of the statute." *Faragher,* 524 U.S. at 806 (quoting *Ford Motor Co. v. EEOC,* 458 U.S. 219, 231 n. 15 (1982)). "[W]hile proof that an employee failed to fulfill the ... obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense." *Faragher* at 807-08.

> *Faragher* implies that a plaintiff should not wait as long as it usually takes for a sexually hostile working environment to develop when the company has an effective grievance mechanism. If the plaintiff complains promptly, the then-incidental misbehavior can be stymied before it erupts into a hostile environment, and no actionable Title VII violation will have occurred.

*Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 267 (5th Cir. 1999).

In this case, accepting Chandler's testimony as true for purposes of summary judgment, her own failure to promptly invoke MDOC's grievance process allowed Thompson to continue his harassing behavior. Although Chandler knew that Thompson's conduct violated MDOC's sexual harassment policy and knew that she could file a grievance to have his conduct stopped, she did not do so for approximately fourteen months. The Fifth Circuit has found shorter delays unreasonable as a matter of law. *See Casiano v. AT&T Corp.,* 213 F.3d 278, 287 (5th Cir. 2000) (finding employee "unreasonably failed to take advantage of any preventive or corrective opportunities" because, even though "he suffered at least fifteen propositions [over a four month

period, he] never reported any of the incidents until months after the last of them"); *Scrivner v. Socorro Indep. Sch. Dist.*, 169 F.3d 969, 971 (5th Cir. 1999) (finding employee "failed to reasonably avail herself of [the school district's] preventative and corrective sexual harassment policies" because, "[f]rom the summer of 1995 to March 1996, [she] never complained about [her principal's] increasingly offensive behavior"); *Frazer v. Angelina Coll.*, 2003 WL 21195492, *1 (5th Cir. 2003) (finding employee "unreasonably failed to utilize [employer's] sexual harassment complaint procedure" by avoiding reporting harassment for "roughly a year."); *Thompson v. Naphcare, Inc*. 117 Fed.Appx. 317, 324, 2004 WL 2554866, 5 (5th Cir. 2004) ("By waiting almost two months to register her complaints and then resigning almost immediately after [employer's] prompt investigation and remedial actions, [employee] cannot be said to have acted reasonably.").

Chandler's explanation that she was too intimidated and afraid of retaliation to report the sexual harassment is insufficient to show that her failure to complain was reasonable. The Fifth Circuit has stated:

> All harassment victims risk retaliation when they complain. For Title VII to be properly facilitated, the reasons for not complaining about harassment should be substantial and based upon objective evidence that some significant retaliation will take place.

*Harper v. City of Jackson Mun. Sch. Dist*., 149 Fed. Appx. 295, 301 (5th Cir. 2005) (quoting *Young v. R.R. Morrison and Son, Inc.*, 159 F. Supp. 2d 921, 927 (N.D. Miss. 2000)).

Chandler testifies in her deposition that another employee, Danny Guice, told her on December 13, 2005, he had told Commissioner Epps that Mr. Thompson had been sexually harassing women on the Coast. Ct. R. 43-9 p. 16. Guice told Chandler that Commissioner Epps assured him that he would take care of it, and he would do it in a way that Mr. Thompson would

not even know where the complaint came from. *Id.* Chandler then heard from another employee that Thompson "was furious and ranted and raved for two hours . . . and he would find out who that person was and he would make sure that she was taken care of." *Id*. This event took place only days before Chandler filed her grievance on the 19th of December. Thus, even if Chandler could produce evidence of this event in an admissible form, it could not have been a reason for the fourteen month delay in bringing Thompson's behavior to the attention of the MDOC.

Chandler also provides other employees' sexual harassment grievances in which investigations were conducted. Ct. R. 43-19, 43-20, 43-23. There is no evidence that retaliatory action was taken against any of these employees for filing a grievance.[6] Thus, the Court concludes that Chandler unreasonably failed to take advantage of the MDOC grievance procedure to mitigate her damages. The MDOC is entitled to the *Faragher/ Ellerth* affirmative defense.

B.      RETALIATION

To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in protected activity; (2) her employer took an adverse employment action against her; and (3) there is a causal connection between the protected activity and the materially adverse employment action. *Aryain v. Wal-Mart Stores Tex. LP*, __ F. 3d __ , 2008 WL 2655792, *8 (5th Cir. July 8, 2008). Once the showing is made, the burden shifts to the defendant, who must produce a

---

[6] One of the complainants, Theresa Reeves, was temporarily reassigned for 90 days to a different facility after reporting harassment by Reeves's supervisor. Ct. R. 43-21 p. 25. However, the evidence shows only a change in location of Reeves's work. This temporary reassignment, standing alone, is not a materially adverse employment action constituting retaliation. *See White*, 548 U.S. at 71; *Holmes v. Drug Enforcement Admin.*, 512 F.Supp.2d 826, 840-41 (W.D. Tex. 2007).

nondiscriminatory reason for the adverse employment action. *Id*. The plaintiff may rebut by showing that the reason provided by the defendant for taking the adverse employment action is a pretext for the actual retaliatory reason. *Id*. There is no doubt that Chandler engaged in protected activity by filing a grievance and an EEOC complaint. Therefore, the first element of a prima facie case of retaliation is satisfied.

At the second step of a plaintiff's prima facie case, the plaintiff is required to show an action that a reasonable employee would have found to be materially adverse. *Aryain* at *8, quoting *Burlington N. & Santa Fe Ry Co. v. White*, 548 U.S. 53, 68 (2006). A materially adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* "In *White*, the Supreme Court noted that the materiality requirement reflects the importance of separating 'significant from trivial harm.'" *Id.* Chandler alleges the following incidents of retaliatory conduct: 1) the handling of her FMLA and accrued leave time; 2) the loss of her state cell phone, vehicle and laptop; 3) her transfer from the Work Center to the Restitution Center; and 4) MDOC's failure to pay her worker's compensation benefits as ordered by the Mississippi Workers' Compensation Commission in January 2007.

      *1.) Leave time calculation*

Chandler alleges she was on administrative leave from December 14, 2005 to April 2006. Ct. R. 44 p. 7. Administrative leave is "at the discretion of the agency head, which is the commissioner." Ct. R. 43-7 p. 26. After her four month period of administrative leave ended, Chandler began using her accrued leave time, which was exhausted in January 2007. Ct. R. 44 p. 7. After January 2007, she was, and continues to be, on leave without pay. *Id.* Her complaint is that once she began using her accrued leave time in April 2006, the MDOC also concurrently ran

the twelve weeks of FMLA leave she was statutorily entitled to, without her knowledge or consent. Ct. R. 44 p. 8. She alleges that as a result, she had to pay her insurance premiums out of pocket, plus she lost twelve weeks of leave to which she was entitled. Ct. R. 44 p. 16.

According to the MDOC personnel director, it is the MDOC's established procedure to run FMLA leave concurrently with accrued leave. Ct. R. 43-13 p. 18. This procedure applies to all employees of the Mississippi Department of Corrections. *Id*. As for Chandler specifically, the personnel director's deposition testimony is not completely clear[7], but she repeatedly makes the point that Chandler did not lose any benefits by being on FMLA:

> During the time that [Chandler] was placed on family medical leave, she had personal leave or had leave on the books for which she could be paid. So consequently, she received a salary. Her insurance benefits were paid out of her leave during the time she was on FMLA because they ran concurrently. So she received a salary.

Ct. R. 43-13 p. 25. Although Chandler asserts she had to pay insurance premiums "out of her pocket," she has provided no supporting evidence that this occurred, nor has she made any coherent argument that she should not have had to pay insurance premiums during the twelve weeks she was on FMLA leave. Furthermore, to the extent Chandler argues that her FMLA leave should have begun after her accrued leave was exhausted in January 2007, the MDOC notes that she had not worked any hours in the 12 months preceding January 2007, Ct. R. 40-17, and would therefore have been ineligible for FMLA leave in January 2007. 29 U.S.C. § 207(e)(2). Chandler does not dispute this assessment of her eligibility.

---

[7] Despite some confusion in the deposition testimony, it appears to the Court that the personnel director was making this distinction: An employee taking FMLA leave but having no accrued leave time would not be paid, but nevertheless, the agency would pay health insurance premiums. An employee taking FMLA leave while having accrued leave time would receive her salary as usual, including having her insurance premiums deducted from her paycheck.

The Court concludes that a reasonable employee would not have been dissuaded from filing a charge of discrimination by the MDOC's leave calculation and procedure described above. Even if it could be characterized as a materially adverse action, Chandler has not attempted to show that the MDOC's explanation of its calculations and procedure are a pretext for an actual, retaliatory reason.

### 2.) *The loss of state cell phone, vehicle and laptop*

Chandler testified that after Thompson became her supervisor, he assigned her a car, cell phone and laptop computer for her use at work. She felt she was not entitled to these items, and had "asked him repeatedly to take the car away because it just wasn't worth it, and he would not take the car away. And he did not take the car away until I filed a grievance. So, of course, I would think that that's why the car was taken away and the laptop and the cell phone. I never wanted those things to begin with. I tried to give him the cell phone back." Ct. R. 43-9 p. 15.

Even if taking back a work car, cell phone and laptop computer could be characterized as a materially adverse action under circumstances of this case, the MDOC provides a legitimate, non-retaliatory reason for it: Chandler was not at work, and had no need for these state-owned items. Chandler does not try to show that this reason is pretextual, and the mere fact that the items were taken from Chandler after her grievance was filed, standing alone, is insufficient to establish an issue of fact as to pretext. *See Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007).

### 3.) *Transfer from the Work Center to the Restitution Center*

Chandler also contends that the MDOC retaliated against her by transferring her

correctional commander position from a community work center to a restitution center on June 1, 2007.  She believes this was retaliatory because, even though it was a lateral transfer, "the restitution center is a completely different program, not even comparable to the community work center as it relates to daily operation."  Ct. R. 43-4 p. 10.  However, even if this transfer could be characterized as a adverse employment action, the MDOC provides a legitimate, non-retaliatory reason for it: Chandler had not reported to work for a year and a half, and her position was one requiring someone to fulfil the duties of commander.  The MDOC Human Resources Director explained the circumstances of the transfer as follows:

> We had several things going.  The position was - - that position was up for accreditation and we needed to have someone in a supervisory capacity obviously to coordinate all of the standards that they had to meet. . . . So we needed to have someone there that could provide some continuity in that position.  And with Ms. Chandler being out for that period of time and without knowing when she was going to return, yes, that decision was made to - - to eventually promote [the lieutenant] into the position.

Ct. R. 43-3 p. 13.

Lora Cole, who made the decision to transfer Chandler, testified that the commander position Chandler left vacant had been unfilled for almost two years, whereas the commander position the MDOC transferred her to had been vacant only a few months.  Ct. R. 43-7 p. 24.  Cole believed that the restitution center could function better with an absent commander than could Chandler's previously assigned community work center.  *Id*.  Chandler does not make any argument or provide any evidence that this reason is pretextual, and the remoteness in time from the protected activity makes a retaliatory animus unlikely.  *See Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994) ("Although [a ten-month] lapse of time is, by itself, insufficient to prove there was no retaliation, in the context of this case it does not support an inference of retaliation, and rather, suggests that a retaliatory motive was highly unlikely.");

*Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001) (Adverse action taken 20 months after an employee filed an EEOC charge, standing alone, suggested "no causality at all").

    *4.) MDOC's failure to pay worker's compensation benefits*

Finally, Chandler contends that the MDOC retaliated against her by failing to pay workers' compensation benefits. Chandler has submitted two orders of the Mississippi Workers Compensation Commission, both entered in 2007. The first orders the MDOC to pay compensation benefits to Chandler, and the second, noting that benefits had not been paid, ordered that a 20% penalty be added to the compensation benefits due to Chandler. Ct. R. 43-8. However, the second order was entered in April 2007, and Chandler has provided no evidence that the MDOC did not comply. Chandler does not even argue that this order has not been complied with - only that it was entered. Furthermore, the lapse of time between Chandler's grievance and this action in her workers' compensation case makes a retaliatory motive unlikely. *Grizzle*, 14 F.3d at 268. The Court therefore finds that this alleged action by the MDOC is not a materially adverse action which would dissuade a reasonable employee from bringing a charge of discrimination.

Even if any of the actions Chandler complains of could be characterized as an adverse employment action, Chandler fails to prove that a causal link exists between any of them and the filing of her grievance. The Fifth Circuit has observed that "the mere fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a prima facie case. . . . Title VII's protection against retaliation does not permit EEO complainants to disregard work rules or job requirements." *Swanson v. Gen. Serv. Admin.*, 110 F.3d 1180, 1188 n 3 (5th Cir. 1997). In this case, the Court is left only with Chandler's

subjective belief that the MDOC took the actions it did because she filed a grievance. She has not shown that these are anything other than consequences of being absent from work since December 15, 2005. Accordingly, the Court concludes that Chandler has failed to make a prima facie case of retaliation. There is no question of material fact for the jury.

C.   DUE PROCESS CLAIM UNDER 42 U.S.C. § 1983

The Court must note that Chandler makes a bare allegation in her complaint that she was deprived of her employment without due process of law, in violation of 42 U.S.C. § 1983. "[T]he threshold requirement of any due process claim, be it substantive or procedural, is a showing that the government deprived the plaintiff of a liberty or property interest." *Pruett v. Dumas*, 914 F. Supp. 133, 137 (N.D. Miss. 1996) (citations omitted). Absent such a showing, no right to due process can accrue. *Id*. There is no evidence in the record that Chandler has been absent from work because the MDOC has prevented her from returning. Instead, the evidence shows that she absented herself, despite assurances from the MDOC that her continued employment was desired. The Court finds no evidence in the record that would create a question of material fact for the jury in regard to this claim.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Defendant's Motion for Summary Judgment [40] is **GRANTED**. Plaintiff's case is **DISMISSED** with prejudice.

**SO ORDERED AND ADJUDGED** this the 30th day of July, 2008.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE